FILED
2024 Oct-02  PM 05:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| THE CITY OF IRONDALE, ALABAMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 2:24-cv-01327-GMB |
| | ) |
| 3M COMPANY, INC.; DAIKIN AMERICA, INC., E.I. DUPONT DE NEMOURS AND COMPANY; DUPONT DE NEMOURS, INC.; CORTEVA, INC.; EIDP, INC., THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; SCHOLAR CRAFT PRODUCTS, INC.; TRICON WEAR SOLUTIONS LLC; and GCP APPLIED TECHNOLOGIES, INC. | ) **PLAINTIFF'S MEMORANDUM** ) **OF LAW IN SUPPORT OF** ) **MOTION TO REMAND** ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO REMAND

**FRIEDMAN, DAZZIO & ZULANAS, P.C.**
Matt Conn (CON062)
Lee Patterson (PAT060)
Maddie Gitschier (GIT002)
Ethan Wright (WRI082)
3800 Corporate Woods Drive
Birmingham, Alabama 35242
*Counsel for the Plaintiff*

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES………………..…………………………………..iii

I.  INTRODUCTION……………..…………………………………...1

II. FACTUAL BACKGROUND……………..…………………….....4

    A.    Procedural History…………………………………………....4

    B.    Plaintiff's Allegations………..…….…………...…………....4

    C.    3M's Misrepresentation About Plaintiff's Allegations………………6

    D.    Plaintiff's AFFF Disclaimer…………………………………..6

III.  STANDARD OF REVIEW……………..……………………...……..7

IV. ARGUMENT……………..…….…………………...…………..7

    A.    3M's Fraudulent Removal is Based on a Misrepresentation of Plaintiff's Factual Allegations………………….…..……………8

    B.    An Express Disclaimer of Federal Claims is Sufficient to Justify Remand…………………………...……………………12

    C.    3M Cannot Meet its Burden to Establish Federal Officer Removal is Proper……………………………….……………………20

        1. 3M Presents a Misleading Factual Predicate……………………..20

        2. 3M Cannot Meet the "Acting Under" Requirement for Federal Officer Removal…………………………………………………….22

        3. There is No Nexus Between 3M's Actions and the Direction of a Federal Officer……………………………...…………………30

        4. There Can Be No "Colorable Federal Defense" to Exclusively State Law Claims……………………………………………………33

D.    Irondale is Entitled to Recover Fees Under 28 U.S.C. § 1447(c)……35

V.  CONCLUSION……………...……..………………...……………...37

# TABLE OF AUTHORITIES

**CASES**                                                                                                      **PAGE(S)**

*Anne Arundel County., Maryland v. BP P.L.C.*,
 94 F.4th 347 (4th Cir. 2024)……………………..……………22, 25, 26, 27

*Bennett v. Bally Mfg. Corp.*,
 785 F. Supp. 559 (D.S.C. 1992)………………...……………..……………...7

*Boyle v. United Techs. Corp.*,
 487 U.S. 500 (1988)……………………………...……………….....12, 34, 35

*Carr v. United States*
 560 U.S. 438 (2010)…………………….……………………………………..29

*City & Cnty. of Honolulu v. Sunoco LP,*
 39 F.4th 1101 (9th Cir. 2022). …………………………….………………28

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
 545 U.S. 54 (2005)…………………….…………………………………...7

*Graves v. 3M Company*,
 17 F.4th 764 (8th Cir. 2021)….…………..………………………...22, 32, 33

*Grosch v. Tyco Fire Products LP*, No. cv-23-01259,
 2023 WL 5993548 (D. Arizona Sept. 15, 2023)……..…14, 21, 28, 30, 31, 32

*Hayden v. 3M Company*, No. 15-2275,
 2015 WL 4720741 (E.D. La., Aug. 10, 2015)…………………….……15, 30

*Illinois ex rel. Raoul v. 3M Co.*,
 693 F.Supp.3d 948 (C.D. Ill. Sept. 21, 2023)………………...…..14, 15, 19

*In Re: Aqueous Film-Forming Foams Products Liability Litigation*
 2:18-mn-2873-RMG, 2022 WL 4291357…......…12, 13, 22, 24, 25, 32, 34, 35

*Jefferson Cnty. v. Acker*,
 527 U.S. 423 (1999)…………………….……............…………………...20

*Joseph v. Fluor Corp.*,
    513 F. Supp. 2d 664 (E.D. La. 2007)…………………………………………..23

*Leite v. Crane Co.,*
    749 F.3d 1117, 1121 (9th Cir. 2014)……………………..…..……….....20, 21

*Long v. 3M Company*, 3:23-cv-1325-R
    2024 WL 866819 (D. Or., Jan. 31, 2024)……………..……..…..……….16

*Maine v. 3M Co.*,
    No. 2:23-cv-00210-JAW,  2023 WL 4758816
    (D. Me. July 26, 2023)……..………………………..13, 14, 15, 16, 17, 19, 33

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005)……………………...…….…………………………...35

*Maryland v. 3M Company, et al.*, CV. No. RDB-23-1836,
    2024 WL 1152568 (D. Md. Feb. 12, 2024)……………..…..Feb. 14, 15, 19, 34

*Mayor and City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022)………………………………..……….....23, 27

*Mulcahey v. Columbia Organic Chem. Co.*,
    29 F.3d 148 (4th Cir. 1994)……………………….………………………7

*New Hampshire v. 3M Co.*,
    665 F.Supp.3d 215 (D.N.H. 2023)…………..…...13, 15, 16, 17, 19, 30, 31, 33

*Parks v. Guidant Corp.*,
    402 F. 964 (N.D. Ill., Nov. 21, 2005)………......................……..…..…...23

*Ripley v. Foster Wheeler LLC*,
    841 F.3d 207 (4th Cir. 2016)……………………….…………………….20

*Sawyer v. Foster Wheeler, LLC*
    860 F.3d 249 (4th Cir. 2017)………………………….………….…….26

*Stafford v. Briggs*
    444 U.S. 527 (1980)…………………….…………………..……………29

*State v. Meadows*,
    88 F.4th 1331 (11th Cir. 2023)…………………………………...………28, 29

*The State of South Carolina v. 3M Company, et al.*, No. 2:23-cv-05979-RMG,
    2024 WL 1470056 (D.S.C. Feb 29, 2024)………………..…..14, 18, 19, 31

*Watson v. Philip Morris Cos.*,
    551 U.S. 142 (2007)…………………………………………..20, 22, 23, 29

*Young v. Tyco Fire Prod., LP*, No. 21-15912
    2022 WL 486632 (9th Cir. Feb. 17, 2022)………………………..……………30

**STATUTES**                                                              **PAGE(S)**

28 U.S.C. § 1442(a)(1)……………………….…..……………........12, 15, 20, 26, 30

28 U.S.C. § 1447(c)……………………………………..…………………..35, 36

**EXHIBITS AND OTHER MATERIALS**                                         **PAGE(S)**

*All 3M Products*; 3M.COM,
    https://www.3m.com/3M/en_US/p/ (last accessed October 2, 2024)……...31

3M Company, Form 10-Q for the Quarterly Period Ended September 30, 2023
 submitted to U.S. Sec. and Exch. Comm'n (2023)…………..………..………...28

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO REMAND

The City of Irondale, Alabama (hereinafter referred to "Irondale" or the "Plaintiff") respectfully moves this Honorable Court to remand this case to where jurisdiction is proper. The Circuit Court of Jefferson County, Alabama. Remand is appropriate in this circumstance because there is no basis for this Court to exercise jurisdiction over what are exclusively state law claims. 3M's argument for removal is based on a false factual assumption and/or interpretation of Plaintiff's Complaint. Furthermore, 3M's arguments supporting its removal action have already been rejected by numerous other courts. As grounds for remand, Irondale sets forth and states as follows:

## I. INTRODUCTION

Through no fault of its own, Irondale must take steps to remove PFAS[1] contamination from its drinking water sources to meet drinking water standards set by the United States Environmental Protection Division ("EPA"). To do so requires sophisticated treatment technology at a very significant cost, and Irondale does not wish to pass these expenses on to its customers. As a result, Irondale filed suit against 3M Company ("3M") and others in to recover PFAS-related expenses and lower or eliminate the PFAS remediation cost to its customers.

---

[1] PFAS refers to a family of chemicals used to impart non-stick, stain resistant, and heat-resistant properties to textiles and other mediums.

After the filing of Irondale's Complaint, 3M has now fraudulently attempted to remove Irondale's case on the basis of federal officer removal. 3M's argument for federal officer removal revolves around the purported use of 3M's Aqueous film-forming foam ("AFFF" or "fire-fighting foam") from an Air National Guard Base ("ANGB") located at the Birmingham-Shuttlesworth International Airport ("BHM Airport"). 3M claims that the "PFAS contamination of the groundwater from which Plaintiff's wells draw the town's drinking water just as plausibly resulted (at least in part) from AFFF use at the Air National Guard Base … at the Birmingham-Shuttlesworth International Airport." (Notice of Removal, Doc. 1, ¶ 2).

3M's **_sole basis_** behind this argument is that the ANGB "is located *between* at least one of" the facilities it claims Irondale identified as the source of PFAS in its groundwater. However, this argument is entirely based on a misrepresentation of the factual allegations made in Plaintiff's Complaint, or, at the least, a false factual assumption and/or interpretation of Plaintiff's Complaint. Either way, 3M's argument is misleading. Nowhere in Plaintiff's Complaint are any claims made against Defendant Scholar Craft's Tarrant Plant, as explained in further detail below, being the cause of, or even related to, the PFAS contamination in Plaintiff's drinking water. The language in Plaintiff's Complaint is clear, and 3M has directly misrepresented this fact to this Court in its Notice of Removal.

Since Plaintiff's Complaint makes no allegations related to PFAS contamination at the Tarrant Plant, 3M's arguments accordingly fail. The BHM Airport, and corresponding ANGB, are not actually "in between" the location of Plaintiff's drinking water source and the facilities where Plaintiff claims the contamination is emanating, as 3M falsely claims. Furthermore, Plaintiff's hydrogeologist, Dr. Charles B. Andrews, Ph.D., states unequivocally that no groundwater flow pathway exists between the ANGB and the Plaintiff's drinking water wells. Therefore, based on the face of Plaintiff's Complaint and the facts surrounding groundwater flow, the airport and ANGB are wholly irrelevant to Plaintiff's claims and cannot be the basis for removal.

Irondale has also explicitly disclaimed any damages relating to MilSpec AFFF, and all firefighting foam for that matter, in its Complaint for which 3M relies upon as a basis for removal. Meanwhile, the same arguments and authorities being raised by 3M in this removal have been considered and rejected by many courts, including the AFFF MDL Court. In keeping, Irondale's case is due to be remanded on the same grounds. 3M's fraudulent removal should be rejected, and this case is due to be summarily remanded.

## II.  FACTUAL BACKGROUND

### A.  Procedural History

Irondale filed suit on August 23, 2024, against 3M and others for damages related to PFAS pollution of its source water. (Complaint, Doc. 1-1).   The Defendants are all, in various capacities, either manufacturers, users, or dischargers of PFAS that have contributed to the pollution. (Complaint ¶¶ 29-55) Irondale's Complaint exclusively alleges state law theories of Negligence (Complaint ¶¶ 113-116), Public Nuisance (Complaint ¶¶ 117-121), Private Nuisance (Complaint ¶¶ 122-125), Trespass (Complaint ¶¶ 126-132), and Wantonness and Punitive Damages (Complaint ¶¶ 133-138).

On September 27, 2024, 3M filed its Notice of Removal arguing that it is entitled to federal officer removal because it produced AFFF in accordance with military specifications ("MilSpec") from the Department of Defense ("DoD") for the United States Military.  (Notice of Removal, Doc. 1, ¶ 2).

### B.  Plaintiff's Allegations

Irondale owns and operates a water treatment system, consisting of multiple groundwater wells, which are the source of Irondale's drinking water.  (Complaint ¶¶ 23-24).   The Defendants' operations, including the manufacturing, sale, use and/or discharge of PFAS, have contaminated Irondale's drinking water sources with PFAS well beyond the current EPA drinking water standards.  (Complaint ¶¶

7-11).  Importantly, conventional drinking water systems, like Irondale's system, are incapable of removing these "forever chemicals" from drinking water.  (Complaint ¶ 5).  Irondale simply seeks past, present and future costs and/or expenses related to the removal of PFAS from its water system and installation of a treatment technique to remove Defendants' PFAS from its source water.  (Complaint ¶¶ 12-13).

Specifically, Irondale has made claims against the PFAS Manufacturer Defendants, including 3M and others, and the PFAS User Defendants, such as Scholar Craft Products, Inc. ("Scholar Craft") and others.  (Complaint ¶¶ 29-55).  Scholar Craft formerly operated a furniture manufacturing plant at 2451 1st Ave S, Irondale, AL 35210 in Jefferson County (the "Irondale Plant") and currently operates a plant at 1 Scholar Craft Pkwy, Birmingham, AL 35217 in Jefferson County (the "Tarrant Plant").  (Complaint ¶ 43).  Plaintiff's Complaint lays out the history of ownership at the Irondale Plant – and not the Tarrant Plant.  (Complaint ¶¶ 44-47).  Then, Plaintiff specifically alleges that "the Irondale Plant discharged PFAS into water and the surrounding air due to the electroplating process involving nickel and chrome."  (Complaint ¶ 48).  Nowhere in Plaintiff's Complaint are any allegations made related to the Tarrant Plant, which is made even more apparent by the fact that Plaintiff makes targeted and specific allegations against the Irondale Plant.

## C. 3M's Misrepresentation About Plaintiff's Allegations

Despite the clear language in the Complaint, 3M filed this fraudulent Notice of Removal stating that Plaintiff's Complaint makes allegations that its drinking water supply "has been contaminated by PFAS releases from manufacturing plants located in Irondale and nearby Birmingham." (Notice of Removal ¶ 1). Specifically, 3M falsely claims that Plaintiff's allegations attribute "the alleged contamination to discharges of PFAS from the Scholar Craft Birmingham plant" (i.e. the Tarrant Plant). (Notice of Removal ¶ 24). However, these allegations cannot be found anywhere in Plaintiff's Complaint.

## D. Plaintiff's AFFF Disclaimer

There is no allegation that MilSpec AFFF, or even non-MilSpec AFFF firefighting foam, caused or contributed to causing Irondale's damages. (Complaint ¶¶ 17-19). In fact, Irondale's Complaint expressly disclaims all federal claims, all claims arising from the manufacture, use or sale of AFFF, including MilSpec AFFF:

> This lawsuit is brought under the laws of the State of Alabama. Plaintiff asserts no federal causes of action, invokes no federal statutes and seeks no relief that is based on any federal statute or laws. Any federal claims are expressly disclaimed.

> Complete diversity does not exist between Plaintiff and all Defendants. This case arises out of the manufacture, supply, use, and disposal of PFAS, and Plaintiff makes no claim that the manufacture or use of AFFF in any way caused or contributed to its damages or the claims asserted in this lawsuit.

Plaintiff expressly disclaims any cause of action or damages arising from or associated with AFFF manufacture, sale, use or disposal by the named Defendants, or by any unnamed defendant or entities, including any legal or factual claim based on alleged "MilSpec AFFF" as well as any potential claims arguably arising from any federal enclaves.

(Complaint ¶¶ 17-19).

## III.  <u>STANDARD OF REVIEW</u>

It is 3M's burden to establish proper removal from state court.  *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *see also Bennett v. Bally Mfg. Corp.*, 785 F. Supp. 559, 560 (D.S.C.1992).  District Courts of the United States are "courts of limited jurisdiction" and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 54, 552 (2005) (internal citation omitted).  District Courts should apply strict construction to removal jurisdiction because it "raises significant federalism concerns." *Mulcahey*, 29 F.3d at 151.  Any doubt as to the Court's jurisdiction weighs in favor of remand to state court. *Id.*

## IV.  <u>ARGUMENT</u>

3M's removal is fraudulent, made in bad faith, and is solely based on a misrepresentation of the allegations made in Plaintiff's Complaint.    3M's misrepresentation of the allegations made in Plaintiff's Complaint is the sole basis for its purported federal officer removal.  For this reason alone, Plaintiff's Motion to Remand should be granted.  Furthermore, as shown by Plaintiff's hydrogeologist,

Dr. Andrews, even if 3M's misrepresentations were accurate, there is still no factual basis to support 3M's argument where the purported of "plausible" groundwater flow pathways claimed by 3M do not even exist. Therefore, 3M's argument not only fails based on a clear reading of Plaintiff's Complaint, but also as a matter of fact.

Moreover, the law is clear that where there is an express disclaimer of federal jurisdiction, the case should be remanded. Irondale's disclaimers moot the federal contractor defense because in this matter, 3M cannot be held liable for PFAS contamination emanating from MilSpec AFFF as these claims were expressly disclaimed in Irondale's Complaint. And, even assuming, *arguendo*, that Irondale's disclaimers were insufficient to warrant remand, 3M still cannot meet its burden for removal, as set forth in detail herein. 3M recycles the same MilSpec AFFF and federal officer arguments that have already been considered and rejected by a multitude of reviewing courts, including the AFFF MDL Court. This case should be no different. Given that these issues have already been decided by the AFFF MDL Court and many others in Irondale's favor, this case should be summarily remanded.

A.  **3M's Fraudulent Removal is Based on a Misrepresentation of Plaintiff's Factual Allegations**

There are many reasons why this case should be remanded, but the easiest is this: 3M has misrepresented Plaintiff's factual allegations in its Complaint to this Court. Irondale has made claims against the PFAS Manufacturer Defendants, including 3M and others, and the PFAS User Defendants, such as Scholar Craft and

others.   (Complaint ¶¶ 29-55).   Scholar Craft formerly operated a furniture manufacturing plant 2451 1st Ave S, Irondale, AL 35210 in Jefferson County (the "Irondale Plant") and currently operates a plant at 1 Scholar Craft Pkwy, Birmingham, AL 35217 in Jefferson County (the "Tarrant Plant"). (Complaint ¶ 43). In Plaintiff's Complaint, Plaintiff lays out the history of ownership at the Irondale Plant – and not the Tarrant Plant.  (Complaint ¶¶ 44-47).  Then, Plaintiff specifically alleges that "the Irondale Plant discharged PFAS into water and the surrounding air due to the electroplating process involving nickel and chrome."  (Complaint ¶ 48).

Despite the clear language in the Complaint, 3M filed this fraudulent Notice of Removal stating that Plaintiff's Complaint makes allegations that its drinking water supply "has been contaminated by PFAS releases from manufacturing plants located in Irondale and nearby Birmingham." (Notice of Removal ¶ 1).  Specifically, 3M falsely claims that Plaintiff's allegations attribute "the alleged contamination to discharges of PFAS from the Scholar Craft Birmingham plant" (i.e. the Tarrant Plant).  (Notice of Removal ¶ 24).  However, these allegations cannot be found anywhere in Plaintiff's Complaint.

Relying on its misrepresentation, 3M argues that the "PFAS contamination of the groundwater from which Plaintiff's wells draw the town's drinking water just as plausibly resulted (at least in part) from AFFF use at the … ANGB … at the Birmingham-Shuttlesworth International Airport." (Notice of Removal, Doc. 1, ¶ 2).

3M's reasoning behind this argument is that the ANGB "is located *between* at least one of" the facilities it claims Irondale identified as the source of PFAS in its groundwater. (Notice of Removal, Doc. 1, ¶ 2). Plaintiff agrees that the ANGB is "located between" the Tarrant Plant and Irondale. However, this is wholly irrelevant, since no claims have ever been made or brought by Plaintiff against the Tarrant Plant, the ANGB or the BHM Airport. Therefore, 3M's argument fails as a matter of fact, since it is based entirely on the misrepresentation that Irondale is making a claim based on the Tarrant Plant and Plaintiff's Complaint makes no allegations related to PFAS contamination at the Tarrant Plant.

It is important to note that the BHM Airport, and corresponding ANGB, are not actually "in between" the location of Plaintiff's drinking water source and *the facilities where Plaintiff claims the contamination is emanating*. For this reason, and this reason alone, Plaintiff's Motion for Remand is due to be granted. However, out of an abundance of caution, Plaintiff has also responded to 3M's legal arguments, below, and obtained the opinion of a hydrogeologist to explain why 3M's argument is also factually implausible. As evidence, please see the attached Declaration of Charles B. Andrews, Ph.D., ("Andrews Dec") attached hereto as **Exhibit A.**

Dr. Charles B. Andrews, Ph.D is a hydrogeologist with over forty-years of experience in the field and has extensive experience with PFAS contamination and migration in groundwater and surface water from manufacturing facilities.

(Andrews Dec. ¶¶ 2-3).  Dr. Andrews was hired by Plaintiff "to evaluate and opine on the PFAS contamination detected in four drinking water supply wells operated by" Irondale. (Andrews Dec. ¶ 4).  Dr. Andrews reviewed Plaintiff's Complaint, 3M's Notice of Removal, Irondale's "water quality sampling for PFAS," groundwater characteristics, potential sources of PFAS, Irondale's source water assessment and publicly available documents from the Geological Survey of Alabama, the Alabama Department of Environmental Management, and the U.S. Geological Survey.  (Andrews Dec. ¶¶ 4-5).

Based on his review and investigation, Dr. Andrews opines that "it is not plausible that the PFAS contamination in the City of Irondale wells originated from releases of AFFF at the Air National Guard Base.  There is no groundwater flow pathway from beneath the base toward the City's wells."  (Andrews Dec. ¶ 8). Stated differently, "[a]bsent a groundwater flow pathway from the Air National Guard Base to the City of Irondale's wells, it is implausible that the PFAS in the wells resulted in part or in its entirety from releases of AFFF at the Air National Guard Base." (Andrews Dec. ¶ 9).  Therefore, any arguments by 3M related to AFFF at the BHM Airport and/or ANGB are wholly irrelevant to Plaintiff's claims and cannot be the basis for removal.  For this reason, Plaintiff's Motion to Remand is due to be granted.

**B.     An Express Disclaimer of Federal Claims is Sufficient to Justify Remand**

Despite Irondale's express disclaimers to the contrary, 3M filed its fraudulent Notice of Removal, invoking federal officer removal under 28 U.S.C. § 1442(a)(1). (Notice of Removal ¶¶ 2, 3, 17).  3M argues that federal officer removal is proper here because of the _possibility_ that some of the PFAS contamination _plausibly_ could have resulted from firefighting foam used by the United States Military, known as MilSpec AFFF.  (Notice of Removal ¶¶ 19, 24, 26, 28).  3M alleges that because it produced MilSpec AFFF, and it is _plausible_ that MilSpec could have contributed to Irondale's damages, it is entitled to federal officer removal. (Notice of Removal ¶ 28).  However, the AFFF MDL Court—where 3M is seeking transfer—found as a **_matter of law_** that 3M could not satisfy the first prong of _Boyle_, which is a prerequisite to raising a federal contractor defense, on nearly identical facts. _In re Aqueous Film-Forming Foams Prod. Liab. Litig._, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *8 (D.S.C. Sept. 16, 2022) ("After carefully considering the parties' arguments, the record before the Court, and the relevant case law, the Court finds as a matter of law that the AFFF MilSpec is not a reasonably precise specification.").

3M further contends that MilSpec AFFF is "governed by rigorous military specifications created and administered by Naval Sea Systems Command." (Notice of Removal ¶ 21).   According to 3M, MilSpec AFFF is required to contain

"fluorocarbon surfactants" which "expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations." (Notice of Removal ¶ 22). However, 3M's brief recitation of the history of MilSpec AFFF omits key facts, which the AFFF MDL Court has already considered as a basis for rejecting 3M's federal officer removal argument:

- MilSpec AFFF is a performance specification, rather than a design specification.

- MilSpec AFFF is designed to give manufacturers the "greatest flexibility as to how they would meet AFFF MilSpec's requirements."

- MilSpec AFFF manufacturers are left to determine their own proprietary chemical formula.

- MilSpec AFFF does not specify a particular formula or require C-8 chemistry, including PFOA or PFOS.

- Hundreds of different PFAS compounds meet the "fluorocarbon surfactants" guidance, which was left up to each individual manufacturer.

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *6-8 (D.S.C. Sept. 16, 2022). The MDL Court has already rejected the same arguments and authorities 3M now recycles. *Id.*

Where there is an express disclaimer of MilSpec AFFF related damages, there can be no federal officer removal, and the case must be remanded to state court. *See e.g. New Hampshire*, 665 F.Supp.3d at 227; *Maine v. 3M Co.*, 2023 WL 4758816 at

*10;  *Illinois,* 693 F.Supp.3d at 958 (C.D. Ill. Sept. 21, 2023); *Maryland*, 2024 WL 1152568, at *3; *Grosch v. Tyco Fire Products LP*, No. cv-23-01259, 2023 WL 5993548, at *4 (D. Arizona Sept. 15, 2023);  *South Carolina*, 2024 WL 1470056, at *3. An express disclaimer alone is sufficient to justify remand.

Courts have even recognized disclaimer language where a disclaimer was ascertained, clarified, and subsequently asserted in post-complaint briefing:

> [T]his case is not subject to removal pursuant to the federal officer removal statute. The first reason is that, in light of Plaintiffs' theory of liability as expressed in the FAC and further refined in the motion-to-remand briefing, Plaintiffs are not seeking to hold Tyco liable for the design, manufacture, and distribution of MilSpec AFFF. Instead, Plaintiffs are seeking to hold Tyco liable for the design, manufacture, and distribution of other forms of AFFF. Given that narrow theory of liability, Tyco's argument that it may be able to raise a federal defense to any product liability claim arising from its design, manufacture, and distribution of MilSpec AFFF—and that it should be allowed the remove this action to federal court so it may pursue such a defense—is a red herring.

*Grosch,* 2023 WL 5993548, at * 4.  From the outset, there has been no ambiguity that Irondale is seeking no damages related to MilSpec AFFF. Where a disclaimer is express, unambiguous, and clear, courts have unanimously found in favor of remand.  *See Maine v. 3M Co.*, No. 2:23-cv-00210-JAW, 2023 WL 4758816 at *10 (D. Me. July 26, 2023) ("Here, the State's disclaimer is express, unambiguous, and plain, and in the Court's view, fits within the category of express disclaimers courts have found effective to justify a remand order.").

The gravamen of a disclaimer is that it eliminates the nexus between state court claims and any damages arising from MilSpec AFFF. *See New Hampshire*, 665 F.Supp.3d at 227-28 ("The State disclaimed in this suit recovery for harm from AFFF contamination, which eliminates any connection between the State's claims in this suit and 3M's production of MilSpec AFFF."); *see also Maine*, 2023 WL 4758816, at \*10 ("[T]he federal officer defense will not be applicable in the State's non-AFFF lawsuit because the State by its express disclaimer has imposed upon itself a burden to demonstrate that its claim involves non-AFFF sources."); *Raoul*, 693 F.Supp.3d at 957-58, and *Maryland*, 2024 WL 1152568, at \*3.

This precept is true not only in the context of PFAS, MilSpec AFFF, and federal officer jurisdiction, but anywhere a plaintiff's disclaimer severs the relationship between a defendant's conduct and its federal acts. *See e.g. New Hampshire*, 665 F.Supp.3d at 227 (citing *Hayden v. 3M Company*, No. 15-2275, 2015 WL 4720741, at \* 3-4 (E.D. La., Aug. 10, 2015)) (holding that the plaintiff's disclaimer of federal claims precluded federal jurisdiction); *see also e.g. Maine*, 2023 WL 4758816 at \* 10 ("Federal courts addressing disclaimer provisions in similar actions have recognize[d] a distinction between artful pleading for purposes of circumventing federal office jurisdiction, and express disclaimers of the claims that serve as the ground for removal under Section 1442(a)(1).") (citing *Batchelor v. American Optical Corp.*, 185 F. Supp. 3d 1358, 1363(S.D. Fla. 2016) (quoting

*Siders v. 20th Century Glove Corp. of Texas*, No. 2:15-cv-13278, 2016 WL 1733473 (S.D.W.V. Apr. 29, 2016)) (additional citations omitted)); and *Long v. 3M Company*, 3:23-cv-1325-R, 2024 WL 866819, at * (D. Or. January 31, 2024) (post removal disclaimer valid in context of asbestos litigation where plaintiff disclaimed damages arising from military exposure or federal sites) (citing *Coury v. Air & Liquid Sys. Corp. (Coury II)*, Case No. 20-cv-264-JR, 2020 WL 2405838, report and recommendation adopted, *Coury Air & Liquid Sys. Corp. (Coury III)*, 2020 WL 3405204 (D. Or. June 19, 2020)) (additional citations omitted). Comparatively, Irondale's disclaimers also preclude from consideration any damages arising from MilSpec AFFF or federally mandated activity and are therefore sufficient to warrant remand.

Importantly, the disclaimer language in Irondale's Complaint is nearly identical to disclaimer language that has been considered and upheld in similar cases dealing with federal officer removal on the basis of MilSpec AFFF. *Maine*, 2023 WL 4758816 at * 3 ("The State is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS."); *New Hampshire*, 665 F.Supp.3d at 211 ("Through this action, the State is not seeking damages, remediation, restoration or any other relief with respect to any contamination related to Aqueous Film-Forming

Foam, which is a specialized category of products that contain PFAS compounds, as that is the subject of a separate action.").

Due to express disclaimer language of MilSpec AFFF-related damages, the primary concern of federal officer removal—that federal claims and defenses are litigated in a federal forum—is rendered moot. *Maine*, 2023 WL 4758816 at * 10 (quoting *Kelleher v. A.W. Chesterton Co.*, No 15-cv-893, 2015 U.S. Dist. LEXIS 159783, at *11 (S.D. Ill. Nov. 23, 2015) ("Plaintiff's waiver has rendered any federal defenses moot."). It is impossible for 3M to be held liable for MilSpec AFFF contamination in this lawsuit due to Irondale's disclaimer language. Where there are no federal claims, "there is no scenario under which 3M could be found liable for any damages caused by AFFF." *New Hampshire,* 665 Supp. at 227-28. Where there is a disclaimer, 3M's Milspec AFFF argument is merely a causation defense, not an independent basis for removal.

The AFFF MDL Court considered many of the above-mentioned authorities when evaluating remand of the South Carolina Attorney General's state court, non-AFFF case, which features similar disclaimer language as the Irondale case. Specifically, the MDL Court held:

> The Court here agrees that the disclaimers moot 3M's government contractor defense because, whether or not 3M meets the requirements for the defense, it cannot be held liable in this case for PFAS contamination originating from AFFF. Because it does not matter that 3M acted in accordance with federal authority, the charged conduct

here is not connected to the alleged federal authority. Accordingly, there is no nexus and federal officer removal is not available.

*South Carolina*, 2024 WL 1470056, at * 3. As is the case here, 3M cannot show a nexus between its non-AFFF business ventures and any sort of federal authority or directive.

Due to the express, unambiguous disclaimers in Irondale's Complaint, 3M cannot be held liable for PFAS contamination originating from MilSpec AFFF, or any AFFF for that matter.  Irondale has not alleged any claims originating from AFFF in this case. If Irondale does one day decide to pursue claims for AFFF related damages, it may do so in federal court, like the numerous state Attorney General cases, and will be well within its rights to do so.  However, due to the disclaimers in the Complaint, 3M cannot be held liable for any conduct purportedly connected to any federal authority, rendering moot 3M's federal officer argument.  Thus, federal officer removal is not available to 3M in this case.

To put a fine point on this argument, it is important to point out that five courts, including the AFFF MDL Court where 3M hopes to transfer this case, have recently considered identical arguments by 3M and found in favor of remand where there has been an express disclaimer of federal jurisdiction, as detailed in the below chart for ease of reference by this Court:

| | |
|---|---|
| *New Hampshire v. 3M Co.*, 665 F.Supp.3d 215, 227 (D.N.H. 2023) | "The State disclaimed in this suit recovery for harm from AFFF contamination, which eliminates any connection between the State's claims in this suit and 3M's production of MilSpec AFFF." |
| *Maine v. 3M Co.*, No. 2:23-cv-00210-JAW, 2023 WL 4758816, at *10 (D. Me. July 26, 2023) | "Here, the State's disclaimer is express, unambiguous, and plain, and in the Court's view, fits within the category of express disclaimers courts have found effective to justify a remand order." |
| *Illinois ex rel. Raoul v. 3M Co.*, 693 F.Supp.3d 948, 957 (C.D. Ill. Sept. 21, 2023) (quoting *Reinbold v. Advanced Auto Parts, Inc.,* No.18-CV-605-SMY-DGW, 2018 WL 3036026, at * 2 (S.D. Ill. June 19, 2018)). | "[C]ourts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." |
| *Maryland v. 3M Company, et al.*, CV. No. RDB-23-1836 2024 WL 1152568, at *3 (D. Md. Feb. 12, 2024) | "Because the State has expressly disclaimed any AFFF-related claims, 3M cannot establish the requisite nexus between charged conduct and asserted official authority." |
| *The State of South Carolina v. 3M Company* et al., No. 2:23-cv-05979-RMG, 2024 WL 1470056, at *3 ((D.S.C. Feb. 29, 2024) | "The Court here agrees that the disclaimers moot 3M's government contractor defense because, whether or not 3M meets the requirements for the defense, it cannot be held liable in this case for PFAS contamination originating from AFFF. Because it does not matter that 3M acted in accordance with federal authority, the charged conduct here is not connected to the alleged federal authority. Accordingly, there is no nexus and federal officer removal is not available. . . Additionally, the Court finds that South Carolina's disclaimer of any AFFF claims, which includes those arising from MilSpec AFFF use and storage on military bases, is a compelling reason to decline supplemental jurisdiction. Accordingly, federal enclave removal is not available." |

### C.    3M Cannot Meet its Burden to Establish Federal Officer Removal is Proper

3M cannot satisfy its burden for federal officer removal.  The federal officer removal statute authorizes removal of a civil action directed to "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).  In this case to establish that federal officer removal is proper under § 1442 (a)(1), 3M must show (1) that it was a "person acting under" a federal officer, *see e.g., Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016); (2) that it has a "colorable federal defense," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999); and (3) that the charged conduct was carried out for or in relation to the asserted official authority, *see* 28 U.S.C. § 1442(a)(1).  3M cannot establish these requirements in this case for removal to be proper for the following four reasons.

### 1.    3M presents a misleading factual predicate

In seeking removal pursuant to federal officer jurisdiction, 3M cannot "offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction."  *Leite v. Crane Co.,* 749 F.3d 1117, 1122 (9th Cir. 2014).  On motion to remand, plaintiffs "may raise either a facial attack or a factual attack on the defendants' jurisdictional allegations." *Id.*  Irondale raises both facial and factual attacks on 3M's notice of removal.

As a starting point, 3M's factual argument is built upon a misrepresentation of Plaintiff's Complaint, or, at the least, a false and misleading factual assumption and/or plainly incorrect interpretation of Plaintiff's Complaint.  (Notice of Removal ¶ 2.)  As described in more detail earlier in this brief, 3M falsely assumes that Plaintiff's damages and claims are related to Scholar Craft's Tarrant Facility.  This is clearly not the case.  (*See* Complaint, Doc. 1-1, ¶ 48).  3M's false factual assumption is in direct contrast to the plain language of the Complaint.  *Id.*

Furthermore, 3M bears a heightened burden of supporting its factual allegations. *Grosch*, 2023 WL 5993548, at * 2 (quoting *Leite., 749 F.3d at 1121-22) ("Where a remand motion raises a factual attack 'by contesting the truth of' the allegations in the notice of removal, the removing defendant 'must support its allegations with competent proof' and 'bears the burden of proving by a preponderance of the evidence' that 'each of the requirements for subject-matter jurisdiction has been met.'"). 3M presents no competent proof of any facts that would support federal officer removal—only a very speculative, false and misleading factual theory.

Similarly, 3M also overstates the import of the military's oversight role pertaining to MilSpec AFFF.  (Notice of Removal ¶ 2) (arguing the firefighting foam that 3M and others sold to the U.S. military was designed to "rigorous military specifications.").  However, the MilSpec directive was simply a performance

specification, the military did not dictate or control the means and methods of production, and the military specification was designed to afford manufacturers the "greatest flexibility as to how they would meet AFFF MilSpec's requirements," and did not require the use of C-8 chemistry including PFOA an PFOS. *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at \*7 (D.S.C. Sept. 16, 2022).

Nevertheless, 3M argues it is entitled to federal officer removal. Even if, assuming arguendo, 3M's improper factual allegations were true, which they are not, 3M still cannot satisfy its legal burden.

### 2.    3M cannot meet the "acting under" requirement for federal officer removal

To qualify for federal officer removal, "a defendant must show . . . that a suit is 'against' any person acting under [an] 'officer' 'for or relating to any act under color of a federal office." *Anne Arundel Cnty.,* 94 F.4th at 347-348. 3M cannot meet this requirement for several reasons.

First, simply because the federal government or a regulatory agency "directs, supervises, and monitors a company's activities in considerable detail" does not entitle a party to federal officer removal. *Graves v. 3M Company*, 17 F.4th 764, 769 (8th Cir. 2021)(citing *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147 S.Ct. 2301 (2007). A business is not "acting under" a federal officer whenever it produces a product for a federal agency in compliance with the agency's specifications. *See,*

*e.g., Joseph v. Fluor Corp*., 513 F. Supp. 2d 664, 673 (E.D. La. 2007) ("[I]t is simply not the case that private entities are entitled to a federal forum whenever litigation arises concerning products sold to the federal government."); *see also Mayor and City Council of Baltimore v. BP P.L.C*., 31 F.4th 178, 230 (4th Cir. 2022) (rev'd on other grounds) (oil company that provided gasoline for resale on military bases was not "acting under" a federal officer; holding otherwise "would bring every seller of contracted goods and services within the ambit of § 1442 when the government is a customer").

Instead, 3M must demonstrate that it was acting under the "subjection, guidance, or control" of the federal government. *Watson*, 551 U.S. at 143, 147 S. Ct. 2301. Close supervision or regulation by the federal government is insufficient to satisfy the "acting under" requirement. The 4th Circuit clarifies that the contractor must be subject to "intense direction and control"— and simply being subject to "specifications" that "required compliance" is insufficient to satisfy this element. *Mayor & City Council of Baltimore,* 31 F.4[th] at 230-31 (4th Cir. 2022) (rev'd on other grounds). A federal performance standard does not confer the necessary level of detail, direction, or control for federal officer removal, and such a broad interpretation would undermine its purpose. *See Parks v. Guidant Corp*., 402 F. 964, 968 (N.D. Ill., Hamond Div. Nov. 21, 2005) (holding that a performance standard without "detailed instruction or direction" was insufficient to satisfy the "acting

under" element required for federal officer removal, and allowing federal officer removal in this context would lead to an "unprecedented expansion of federal jurisdiction.").

Here, 3M cannot show it was subject to the "intense direction and control" necessary to establish the "acting under" element of federal officer removal and seeks to relitigate factual issues already decided by the AFFF MDL Court. For instance, 3M asserts, with no evidence in support,[2] that "[t]he manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command." (Notice of Removal ¶ 21.)  Yet, the AFFF MDL Court—where 3M will almost assuredly seek transfer—already rejected this claim. As that Court previously held in rejecting 3M's assertion of the governmental contractor immunity defense in the AFFF products liability litigation, even after years of fact discovery, 3M "ha[d] not put forth evidence of such extensive collaboration with the government in the design of [3M's] MilSpec AFFF." *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *7 (D.S.C. Sept. 16, 2022).

Rather, as the MDL Court found at the summary judgment stage in the AFFF litigation, the government simply provided *performance* specifications for MilSpec

---

[2] 3M cites to a website/url in its Brief, but Plaintiff could not access the documents purportedly available at this website/url.

AFFF, and not detailed *design* specifications. *See id.* at *8 ("After carefully considering the parties' arguments, the record before the Court, and the relevant case law, the Court finds as a matter of law that the AFFF MilSpec is not a reasonably precise specification."). In other words, as long as performance criteria were satisfied, the Navy did not make any specific recommendation as to chemical composition beyond containing "fluorocarbon surfactants." *Id.* at *6. In fact, as the AFFF MDL Court found, PFAS, including PFOS and PFOA, "are not necessary as primary ingredients in MilSpec AFFF." *Id.* at *7.

The Navy gave wide latitude for each MilSpec AFFF manufacturer to create a product that satisfied the MilSpec Performance requirements and "did not specify the use of a particular formula or the use of C8 chemistry." *See id.* at *6. Simply because 3M produces a product that is on the Navy's Qualified List does not mean that 3M is subject to the requisite level of "subjugation, guidance, or control" required for it to show that it was "acting under" a federal mandate. 3M's attempts to relitigate these legal and factual issues in order to manufacture delay should be rejected.

For example, in *Anne Arundel Co*., two Maryland local governments brought actions against BP P.L.C. and others under Maryland's Consumer Protection Act and other state tort law causes of action based on damages flowing from climate change and defendants alleged efforts to obfuscate the relationship between their

25

products and climate change. Defendants attempted removal under 28 U.S.C. § 1442 (a)(1) on the basis that they were subject to "pervasive federal control" which included "producing specialized fuels for the military" among other things. 94 F.4th at 349 (4th Cir. 2024). Ultimately, the 4th Circuit rejected this argument. *Id.* at 350.

The *Anne Arundel Co*. court applied the holding in *Sawyer v. Foster Wheeler, LLC*, 860 F.3d 249 (4th Cir. 2017) to articulate its reasoning. *Id.* at 349. In *Sawyer*, the estate of a worker who died from asbestos exposure while assembling boilers in the Navy brought claims for failure to warn claims against the manufacturer of the boilers at issue. *Id.* (citing *Sawyer*, 860 F.3d at 258). However, "the Navy *dictated the content of warnings." Id.* (quoting *Sawyer*, 860 F.3d at 258) (emphasis in original). Given this, the manufacturer's conduct was "directly related to the asserted official authority." *Id.* In contrast, the defendants in *Anne Arundel* "do not argue the federal government required them to market or describe their products a certain way." *Id.*

The present action is more akin to *Anne Arundel Co.* than *Sawyer.* While MilSpec AFFF may be on the Navy Qualified List, this federal initiative is a performance-based standard, not a design mandate. Neither the military nor the federal government controls the means and the methods of production, and 3M retained wide latitude to manufacture, advertise, and produce MilSpec AFFF, which accounts for a small fraction of its commercial product offerings. The vast majority

of 3M's product offerings that contain or contained PFAS are subject to zero federal or military guidance. Certainly, 3M cannot blame its concealment and misrepresentations about PFAS on the federal government or the military.

Here, as in *Baltimore*, "the 'source of tort liability' was not any production-related activities but the defendants' 'concealment and misrepresentation of [their] products' known dangers—and the simultaneous promotion of their unrestrained use." *Anne Arundel Co*., 94 F.4th at 350 (quoting *Baltimore*, 31 F. 4th at 233-34). The 4th Circuit joined the First, Second, Eighth, and D.C. Circuits "in holding that allegations like those here do not support federal officer removal." *Id.* (additional citations omitted).

Other circuits have applied similar tests to reach the same conclusions in the context of federal officer removal on the basis of MilSpec AFFF production. For example, to determine whether a party was "acting under" the instruction of a federal officer, the 9th Circuit examines whether the removing party is: "(1) working under an officer in a manner akin to an agency relationship, (2) being subject to the officer's close direction, such as acting under the guidance, or control of the officer or having an unusually close relationship involving detailed regulation, monitoring, or supervision, (3) helping fulfill basic [federal] governmental tasks, and (4) conducting activities so closely related to the government's implementation of its federal duties that the person faces a significant risk of state-court prejudice." *City*

*& Cnty. of Honolulu v. Sunoco LP,* 39 F.4th 1101, 1107 (9th Cir. 2022). Applying this framework, courts have determined manufacturers of MilSpec AFFF "did not act under a federal officer" for similar conduct at issue. *See Grosch*, 2023 WL 5993548 at * 6.

In addition, the 11th Circuit limits federal-officer removal to current—not former—federal officers. *State v. Meadows*, 88 F.4th 1331, 1338 (11th Cir. 2023) ("The meaning of 'officer' does not include 'former officer.'") (internal citations omitted). Recently, 3M admitted in an SEC filing that it has not manufactured or used PFAS-containing AFFF anywhere since 2002. (*See* 3M Company, Form 10-Q for the Quarterly Period Ended September 30, 2023 submitted to U.S. Sec. and Exch. Comm'n, at p. 41 (2023)). 3M's Notice of Removal, meanwhile, only references AFFF production from "over three decades" while it was on the "Navy's Qualified Products List for MilSpec AFFF from 1970 until 2010." (3M Notice of Removal ¶ 23.) Thus, according to the 11th Circuit's rule, 3M cannot currently be "acting under" a federal directive in regard to MilSpec AFFF production, and therefore, federal officer jurisdiction is not available.

3M may argue that *Meadows* should not apply because 3M alleges that it was a contractor "acting under" a federal officer, not a federal officer itself. This is a distinction without a difference. 3M cannot dispute that *Meadows* limits federal officer removal to "current" federal officers, and 3M cannot provide a logical

28

explanation for why private contractors would receive more protection under the "federal officer removal" statute than federal officers themselves. Such a reinterpretation would hardly align with the federal officer removal statute's basic purpose of "protect[ing] the Federal Government from the interference with its operations." *See Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150 (2007) (internal quotations omitted). Simply put, under *Meadows* and the plain language and purpose of the federal officer removal statute, the "*acting* under" requirement does not include persons—like 3M—who formerly "*acted* under" a former officer.[3]

Regardless of the test applied, 3M cannot show that its conduct occurred at the "intense direction and control" of a federal officer (or any person acting under that officer), and therefore fails to satisfy the "acting under" element required for federal officer removal.

---

[3] *Cf. Stafford v. Briggs*, 444 U.S. 527, 535–36 (1980) (noting that the phrase "in which a defendant is an officer or employee of the United States . . . acting in his official capacity or under color of legal authority" was "cast by Congress in the present tense"); *Carr v. United States*, 560 U.S. 438 (2010) ("[T]he Dictionary Act's provision that statutory 'words used in the present tense include the future as well as the present,' 1 U.S.C. § 1, implies that the present tense generally does not include the past.").

### 3.    There is no nexus between 3M's actions and the direction of a federal officer

Even if 3M were to show it was "acting under" a federal directive, 3M still must "demonstrate that . . . there is a casual nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims." *Grosch*, 2023 WL 5993548, at * 4; *see also New Hampshire v. 3M Company*, 665 F. Supp. at 227 (citing *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 943-44 (7th Cir. 2020)).   In making this showing, 3M "cannot manufacture a claim that does not already exist in the complaint, so that [it] can then assert a federal defense to that claim to serve as a basis for federal jurisdiction." *Id. at * 5*, (quoting *Young v. Chemguard*, No. CV-21-00568 PHX-SPL, 2021 WL 2070445 (D. Ariz. May 24, 2021), *aff'd sub nom. Young v. Tyco Fire Prod., LP*, No. 21-15912, 2022 WL 486632 (9th Cir. Feb. 17, 2022)). Here, 3M attempts to assert a federal defense to a phantom federal claim never asserted by Irondale.

 On its face, 3M's argument fails. Where there are no claims giving rise to a federal defense, there is no "nexus" between state claims and acts arising under federal authority:

> "The court lacks removal jurisdiction under § 1442(a)(1) because 3M has not shown that a "nexus" exists between the State's claims in this case and 3M's alleged acts under federal authority. Like the plaintiff in Hayden, the State has consistently disclaimed any recovery for contamination resulting from 3M's production of AFFF. That disclaimer is effective and eliminates the connection between the State's broad statewide claims and 3M's production of MilSpec AFFF for the United States military."

*New Hampshire*, 665 Supp. at 227 (additional citations omitted).  The AFFF MDL Court agreed with the ruling and rationale.  *South Carolina*, 2024 WL 1470056, at *3. Under the law, 3M's attempt to manufacture a claim that does not exist in the complaint in order to assert a federal defense must fail.  *See Grosch,* 2023 WL 5993548 at * 5 (additional citations omitted).  Regarding the claims that are in the Complaint, 3M cannot demonstrate any nexus to federal activity.

3M's own website purports to sell the following products: abrasives; adhesives, sealants & fillers; advanced materials; automotive parts & hardware; building materials; cleaning supplies, coatings, communications; compounds and polishes, dental & orthodontics; electrical; electrical materials & components; films & sheeting; filtration & separation; home; insulation; lab supplies & testing; labels; lubricants; medical; office supplies; personal protective equipment; signage & marking; tapes; and tools & equipment.[4] By and large, these are consumer products that have zero nexus to MilSpec AFFF, and are produced for commercial and not military purposes.

Considering the same issues, Courts have found no nexus to military purposes where products are largely manufactured for commercial purposes:

> Although Tyco asserts in conclusory fashion that "[a]ll MilSpec AFFF is military equipment, no matter where or by whom it is used" (Doc. 9 at 5), there is no evidence that the military has mandated that AFFFs supplied to non-federal entities (such as municipal fire

---

[4] *All 3M Products*; 3M.COM, https://www.3m.com/3M/en_US/p/ (last accessed October 2, 2024)

departments like the Phoenix Fire Department) must conform to military specifications. If Tyco's contention is that it provided the exact same product to the Phoenix Fire Department that it previously designed for and provided to the military, that choice—*i.e.*, a choice not to redesign an already-designed product but rather to use that already-designed product as a commercially available stock product—was a business decision, not a decision compelled by the military. The product that Tyco supplies to non-military clients may be dubbed "MilSpec" AFFF, but mere nomenclature cannot supply the requisite causal nexus. *Cf. Graves v. 3M Company*, 17 F.4th 764 (8th Cir. 2021) (agreeing with the district court's determination that it "would be hard-pressed to find that 3M could reasonably say 'the government made me do it' " in relation to commercial sales of a product originally designed for the military). The bottom line is that Tyco was not doing what it was "asked to do by the Government," *Goncalves*, 865 F.3d at 1245, when it chose, decades after MilSpec AFFF was initially designed for and supplied to the military, to supply a product that met MilSpec AFFF's design specifications to the Phoenix Fire Department.

*Grosch,* 2023 WL 5993548 at * 7.

Even for MilSpec AFFF, the military has not given a strict design mandate, controlled the means and methods of manufacture, nor required that 3M use PFOA or PFOS. Similarly, the military did not direct 3M to use PFAS in regard to any of the above-mentioned commercial products, and the military certainly did not mandate 3M to conceal more than 1,200 studies demonstrating the toxic nature of PFAS from the general public, military, and regulators alike. *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357 (D.S.C. Sept. 16, 2022), Entry 2601, pp. 17-18. The suit at issue does not blame the U.S. military, and it is repugnant that 3M now blames the U.S. military for the conduct giving rise to its liability.

### 4.    There can be no "colorable federal defense" to exclusively state law claims

3M improperly seeks to assert an affirmative federal defense to exclusively state law claims.  The burden of proof is "on the removing party as making a 'plausible' claim of federal officer defense." *Maine*, 2023 WL 4758816 at * 9 (citing *Graves*, 17 F.4th at 771) (additional citations omitted).  3M cannot make this showing.  Where a party explicitly limits its claims to state law, there can be no nexus between its conduct and any "colorable federal defense." *See New Hampshire,* 665 F.Supp.3d at 227-28.

As explained above, the plain language of the AFFF disclaimer in Irondale's Complaint eliminates from consideration any "colorable federal defense" by destroying the nexus between Irondale's claims and any action taken pursuant to a federal directive. Yet, even if Irondale's disclaimer was somehow deemed insufficient, 3M cannot make the factual showings necessary to give rise to a plausible or colorable defense, or even a realistic defense. Even if some of the damages alleged were ostensibly related to MilSpec AFFF, this is simply a causation defense for 3M and not an independent basis for removal. *See New Hampshire.*, 665 F.Supp.3d at 227-28.

Finally, even if, assuming arguendo, 3M's factual arguments were true, 3M cannot make the legal showing to demonstrate it is entitled to assert a "colorable" federal defense to Irondale's claims. Notwithstanding the fact that Irondale has not

raised any federal claims, a "colorable" defense exists only "where (1) the federal government approved reasonably precise specifications, (2) the manufactured equipment conformed to the government's specifications, and (3) the contractor warned the federal government about the equipment dangers that were unknown to the government." *Maryland*, 2024 WL 1152568 at * 3 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). In other words, 3M must be able to demonstrate that it can present evidence for each element of the *Boyle* government contractor defense.

Yet, the MDL Court concluded that after years of litigation and discovery, 3M still was not able to establish those elements in the context of AFFF. *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, *5-8 (D.S.C. Sept. 16, 2022) (denying 3M and other Defendants' Motion for Summary Judgment on Government Contractor Defense under *Boyle*). For instance, the MDL Court found "as a matter of law that the AFFF MilSpec is not a reasonably precise specification under the first prong of *Boyle*." *Id.* at *8.[5] Moreover, "3M's late disclosure of over 1,200 reports and studies" related to PFOS

---

[5] This ruling is fatal to 3M, which admits that a government contractor defense is only "colorable" if "legitimate and reasonably [] asserted, given the facts presented and the current law." Notice of Removal ¶ 42 (quoting *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 815 (3d Cir. 2016)). The MDL Court's ruling "*as a matter of law* that the MilSpec AFFF is not a reasonably precise specification under the first prong of *Boyle*" necessarily precludes any finding that 3M's government contractor defense is colorable.

and PFOA, including "particularly significant" internal studies related to the effects of C-8 chemistries on human health and the environment, stands as a bar to the third prong of *Boyle*.[6] *See id.* at \*9–\*10. Therefore, 3M's federal officer removal defense on the basis of MilSpec AFFF is not viable here.

### D.    Irondale is entitled to recover fees under 28 U.S.C. § 1447(c)

It is within this Court's discretion to award fees under 28 U.S.C. § 1447(c). *Id.* ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.") (*see also Martin v. Franklin Capital Corp*., 546 U.S. 132, 136 (2005)).  On motion to remand, the "standard for awarding fees should turn on the reasonableness of the removal" and "courts may award fees under § 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal." *Martin,* 546 U.S. at 136.

Here, 3M fraudulently removed Irondale's case on fabricated grounds that were clearly not plead in Irondale's Complaint.  In contrast, 3M's arguments clearly contradict the plain language in Irondale's Complaint.  Irondale never made any claims against or related to Scholar Craft's Tarrant Plant, as was misrepresented to this Court.  Instead, Irondale has only made claims against Scholar Craft's Irondale

---

[6] As the AFFF MDL Court noted, these actions resulted in 3M being levied with a $1.5 million fine under the Toxic Control Substances Act ("TCSA").  *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at \*9 (D.S.C. Sept. 16, 2022).

Plant and other facilities located in the vicinity of the Scholar Craft Irondale Plant. None of these facilities are located anywhere near the Tarrant Plant, the BHM Airport or the ANGB. (Complaint, Doc. 1-1, ¶¶ 43-55). It is clear in Plaintiff's Complaint that the facilities for which Plaintiff's allegations are being made are "above or adjacent" to Irondale's drinking water sources, and not, as 3M misrepresents, miles away at locations that are either not mentioned in the Complaint or wholly irrelevant to the contamination and allegations. There is no colorable or plausible basis for 3M's filing of a Notice of Removal on these grounds.

Further, 3M should not be allowed to re-litigate substantive issues (inapplicability of AFFF disclaimers, availability of federal contractor immunity) that it has already lost in previous cases. These unscrupulous attempts to re-litigate old issues are a waste of time and resources for all of the parties and law firms involved, and, more importantly, for this Court and the other federal courts in which 3M is attempting to re-litigate these same issues.

3M has forced Irondale to halt its investigation of this case, and ultimately a resolution for providing PFAS-free drinking water to its customers, in order to respond to this misleading and fraudulent Notice of Removal. Given this, Irondale respectfully requests an award of costs and fees under 28 U.S.C. § 1447(c).

## V. <u>CONCLUSION</u>

3M knew from the face of Plaintiff's Complaint that Plaintiff was not making any claims related to Scholar Craft's Tarrant Plant, and, more importantly, the BHM Airport and/or ANGB. However, 3M decided to mislead this Court and file this Notice of Removal anyway in a "Hail Mary" attempt to delay this case from moving forward in its proper state court venue. Such actions should not be allowed and the case should be remanded immediately in order to combat 3M's unscrupulous tactics.

Moreover, allowing federal officer removal in this context would promote gamesmanship, undermine the rationale of the federal officer doctrine, and run contrary to the previous rulings of multiple courts that have rejected identical arguments from 3M. Because Irondale expressly disclaims any recovery related to MilSpec AFFF, there can be no nexus between Irondale's claims and federal authority. Further, even in the absence of a disclaimer, 3M cannot meet its burden. 3M has not acted under a federal officer or a person acting under that officer, cannot demonstrate a nexus between its behavior and a federal directive, and cannot raise a "colorable" federal defense to what are exclusively state law claims. The same legal and factual arguments now raised by the Defendants have already been considered and rejected by several courts, including the AFFF MDL Court, which 3M will undoubtedly attempt to transfer this case to if it is successful in its attempt to remove.

Respectfully, Irondale's case should be summarily remanded to Jefferson County, Alabama, and Irondale should recover the fees and costs associated with responding to 3M's removal.

Respectfully submitted this 2nd day of October 2024.

/s/ Matt Conn
Matt Conn (CON062)
mconn@friedman-lawyers.com
Lee T. Patterson (PAT060)
lpatterson@friedman-lawyers.com
Maddie Gitschier (GIT002)
mgitschier@friedman-lawyers.com
Ethan Wright (WRI082)
ewright@friedman-lawyers.com
**Counsel for Plaintiff**

**OF COUNSEL:**
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
Ph# 205-278-7000

/s/ April Danielson (w/permission)
April Danielson (DAN030)
adanielson@wallacejordan.com
Kimberly West (WES008)
kwest@wallacejordan.com
Lauren Brasher (BRA178)
lbrasher@wallacejordan.com
**Counsel for Plaintiff**

**OF COUNSEL:**
WALLACE JORDAN RATLIFF & BRANDT, LLC
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Ph# 205-870-0555

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2024, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to all counsel of record, and that a copy was served via U.S. Mail and/or Email to the following:

**<u>VIA E-MAIL:</u>**

M. Christian King
Harlan I. Prater, IV
W. Larkin Radney, IV
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
cking@lightfootlaw.com
hprater@lightfootlaw.com
lradney@lightfootlaw.com
**Counsel for Defendant 3M Company**

**<u>VIA U.S. MAIL:</u>**

DAIKIN AMERICA, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

E.I. DUPONT DE NEMOURS AND COMPANY
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

CORTEVA, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

DUPONT DE NEMOURS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

EIDP, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

THE CHEMOURS COMPANY
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

THE CHEMOURS COMPANY FC, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

SCHOLAR CRAFT PRODUCTS, INC.
c/o Kenneth Goode
#1 Scholar Craft Parkway
Birmingham, AL 35217

TRICON WEAR SOLUTIONS LLC
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

GCP APPLIED TECHNOLOGIES, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

*/s/ Matt Conn*
OF COUNSEL